**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE PENNSYLVANIA TRUST** | : | |
| **COMPANY, Guardian of the Estate** | : | **CIVIL ACTION** |
| **of Ethan Waltman, a Minor,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DOREL JUVENILE GROUP, INC.,** | : | **No. 07-4029** |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

Schiller, J.                                                                                            July 18, 2011

Defendant Dorel Juvenile Group ("Dorel") manufactures child booster seats.  Dorel seeks sanctions due to Plaintiff's failure to preserve the seat that allegedly injured Ethan Waltman.  It requests that the Court bar testimony that Ethan used the booster seat on the day of the crash, and that the Court instruct the jury that whatever seat Ethan did use had ten pounds of seatbelt tension.  The Court heard oral argument on June 27, 2011, and the parties have submitted supplemental briefing.  The Court will grant the motion in part and deny it in part for the reasons stated below.

I.       **BACKGROUND**

A.       **The March 4, 2006 Accident and Destruction of the Booster Seat**

On March 4, 2006, two-year-old Ethan Waltman was riding in the back seat of his parents' minivan when his mother drove it into a tree.  (Pl.'s Mem. in Opp'n to Def.'s Mot. for Spoliation Sanctions [Pl.'s Opp'n] 1-2.)  Ethan suffered serious injuries, including catastrophic brain damage.  (*Id.* at 2.)

Midway Towing removed the minivan from the accident scene.  (Def.'s Mot. for Spoliation Sanctions [Def.'s Mot.] Ex. 1, Karl Hartranft Dep. 88.)  Around four days after the crash, Midway

Towing contacted Ethan's father, Benjamin Waltman.  (Def.'s Mot. Ex. 3, Benjamin Waltman Dep. 59.)  The towing company left him several voicemail messages regarding the bill for moving and storing the minivan.  (*Id*. at 58.)

Waltman viewed the wreck at Midway Towing.  (*Id*. at 50.)  He took pictures of the minivan's exterior and of the interior on the driver's side and front passenger's side.  (*Id*. at 55.) Waltman testified that he saw Ethan's booster seat still in the vehicle, in the third-row seat on the passenger side.  (*Id*. at 51.)  He did not take any pictures of the booster seat.  (*Id*. at 55.)

Midway Towing offered to waive towing and storage fees if Waltman agreed to sign over the minivan's title.  (*Id*. at 58.)  Waltman agreed and brought the title to Midway Towing.  (*Id*.)  He did not retrieve the car seats in the minivan, as they had been in an accident and "somebody told [him] . . . it wouldn't be wise to use them again."  (*Id*.  at 59.)

Waltman had an insurance policy with Progressive.  (*See* Def.'s Mot. Ex. 2, Insurance Claim Summary; *see also* Benjamin Waltman Dep. 54.)  Progressive received notice of the Waltmans' claim on March 7, 2006.  (Insurance Claim Summary.)  The insurance company sent Waltman a letter dated March 8, 2006 which he received around March 14, 2006.  (Def.'s Mot. Ex. 11,  March 8, 2006 Progressive Letter.)  The letter informed Waltman that the value of his claim appeared to exceed his policy limits, and advised him that if he wished to pursue claims beyond the liability limit of his policy at his own expense, Progressive would cooperate with his attorney.  (*Id*.)

Waltman later became frustrated with Progressive when they "didn't want to give [him] any answers."  (Benjamin Waltman Dep. 54.)  He contacted attorney Soren West around two months after the accident to discuss his issues with Progressive.  (*Id*. at 53-54, 60.)  Waltman claims that he first considered a claim against Dorel after his discussion with West.  (*Id*. at 54.)  He later called

Midway Towing, but learned that the car seat had already been destroyed along with the rest of the minivan. (*Id*. at 60.)

### B.    The Cosco Grand Explorer

Plaintiff alleges Ethan was riding in one of Dorel's Cosco Grand Explorer booster seats ("the Cosco") at the time of the crash. The family primarily used the Cosco for Ethan's four-year-old brother, Desmond. (*Id*. at 44.) Benjamin Waltman did not recall Ethan ever riding in the Cosco before the day of the accident. (*Id*.)

Ethan's mother, Kimberly Waltman, testified that her sister and Ethan's brother Cayden were also in the minivan at the time of the accident. (Pl.'s Opp'n Ex. E, Dep. of Kimberly Waltman Dep. 146.) Before their trip, Kimberly carried Cayden's car seat to the minivan and her sister, Rebecca Polson, carried Ethan. (*Id*.) Kimberley testified that Polson told her that the Cosco was the only booster seat already installed in the minivan. (*Id*.) The Waltmans owned other booster seats, including three five-point seats the family had purchased for Ethan. (*Id*.) Nevertheless, Kimberly responded that Rebecca could place Ethan in the Cosco, as it was the only seat installed in the minivan that day. (*Id*. at 124, 146)

Polson placed Ethan in the seat, while Kimberly installed Cayden's seat. (*Id*. at 146) Polson was unfamiliar with the Cosco, and had trouble with the seatbelt. (*Id*. at 149.) However, Kimberly did not check to see whether Polson had placed Ethan in the Cosco correctly. (*Id*. at 146)

Polson insisted at her deposition that she did not remember anything about the car seat:

> I don't remember what the car seat looked like. I don't remember what kind of car seat it was. And to be completely honest, I don't remember if there was a car seat in the car. I don't remember seeing it after the accident. I don't remember. And everything I do remember, I told the police at the time of the accident.

3

(Def.'s Mot. Ex. 10, Polson Dep. 29-30.)  Polson also testified that everything she knew "about the car seat or anything is all stuff that I was told from other people because I do not remember.  I do not remember the car seat.  I do not remember the car seat."  (*Id*. at 30.)  However, she recalled discussing the accident with Ethan's parents "a little while after the accident," and discussing whether "it was the wrong car seat, that he was in the wrong kind of car seat" or that "the car seat was not . . . equipped correctly."  (*Id*.)

Two witnesses recalled seeing booster seats in the minivan at the accident scene.  Emergency worker Jeremy Sauder testified that the booster seat in the minivan in the position where Ethan was seated was "one of those basic seats that has a platform on the bottom and then has a back."  (Def.'s Mot. Ex. 6, Sauder Dep. 16.)  The Cosco does not have a back.  Chad Slover, another first responder present at the accident scene, testified that he saw a backless, rear-facing seat in the minivan that appeared similar to the Cosco.  (Pl.'s Opp'n Ex. F., Slover Dep. 16-17.)

## C.    Expert Analysis

Both Plaintiff and Dorel obtained expert analysis of the Cosco and Ethan's injuries.  Due to the loss of the minivan and the Cosco, the experts have assumed for the purposes of their reports that Ethan was seated in the Cosco.  (*See, e.g.*, Def.'s Mot. Ex. 8, Van Arsdell Dep. 18-19.)  Plaintiff's expert, Gary Whitman, testified that if he had been able to inspect the Cosco and the minivan, he may have been able to determine how the seat was used, including approximately how much tension there was in the seatbelt at the time of the crash.  (Def.'s Mot. Ex. 4, Whitman Dep. 67-69.)  Based on surrogate studies, Whitman estimated that the belt had one to four pounds of tension; Dorel's expert, Van Arsdell, found that there may have been approximately ten pounds of tension.  (*Id*. at 186; Van Arsdell Dep. 108.)

D.     **Procedural History**

The Pennsylvania Trust Company appears in this case as the guardian of Ethan Waltman's estate.  Ethan's father, Benjamin Waltman, previously pursued Ethan's claims on his behalf.  The Court granted Plaintiff's motion to substitute the Pennsylvania Trust Company as plaintiff on March 24, 2011.

II.     **STANDARD OF REVIEW**

Courts may impose spoliation sanctions for destruction of evidence if:  (1) the evidence was within the party's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable.  *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 112 (E.D. Pa. 2005).  The existence of bad faith or "evil motive" is not a prerequisite for sanctions.  *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994).  Unintentional destruction of evidence, "if the result of unreasonable conduct, subjects a party to sanctions."  *Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*, Civ. A. No. 05-6399, 2007 WL 2571450, at *5 n.28 (E.D. Pa. Aug. 31, 2007).  However, courts decline to sanction purely accidental conduct, where the evidence "in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

III.     **DISCUSSION**

Dorel asserts Plaintiff has violated its duty to preserve evidence and asks that the Court bar Kimberly Waltman from testifying that Ethan was using the Cosco on the day of the accident and

5

instruct the jury that whatever child restraint Ethan used had approximately ten pounds of belt tension. (Def.'s Mot. 24-25.)  Plaintiff concedes that the minivan and Cosco are unavailable, but requests that the Court either impose no sanction or provide a permissive inference spoliation instruction at trial. (*See* Pl.'s Spoliation Instruction and Br. in Supp. thereof 5.)  The Court concludes spoliation sanctions are appropriate and will fashion an appropriate remedy.

### A.      Plaintiff's Spoliation of Evidence

#### 1.      *The evidence was in Plaintiff's control and suppressed*

Plaintiff argues that neither Ethan nor his parents "had possession or control over the vehicle following the accident once it was towed from the scene at the request of the police and impounded at the request of the district attorney." (Pl.'s Opp'n 4.)  Ethan played no role in his family's decision not to retain the minivan or the booster seat.  Nevertheless, Ethan's blamelessness does not obviate his father's destruction of evidence.  For the purposes of this analysis, it is clear that Plaintiff — at all relevant times, Benjamin Waltman acting on his son's behalf — had control over the minivan and the Cosco. *See, e.g.*, *Walters ex rel. Walters v. Gen. Motors Corp.*, 209 F. Supp. 2d 481, 491 (W.D. Pa. 2002) (finding vehicle was under plaintiff's control where plaintiff, proceeding on behalf of her injured son, transferred title to insurance carrier which apparently scrapped the vehicle); *see also Powell v. Texvans, Inc.*, Civ. A. No. 09-1079, 2011 WL 1099120, at *5 (D. Nev. Mar. 22, 2011) (holding that plaintiffs, proceeding on behalf of decedents in wrongful death action, were "not absolved from responsibility" for failure to preserve vehicle).

Plaintiff also argues that the minivan was not in Benjamin Waltman's control after the accident, stating that he "never again possessed the van" after it was towed. (Pl.'s Opp'n 5.)  This is not the case.  Benjamin Waltman maintained title to the minivan until approximately four days

after the accident, when he voluntarily transferred title to Midway Towing.  (Waltman Dep. 58-59.)
He also had access to the minivan, taking pictures of the vehicle inside and out.  (*Id*. at 55.)

Dorel has established that the minivan and the Cosco disappeared while under Plaintiff's
control.  *See Paris Bus. Prods., Inc. v. Genisis Techs., LLC*, Civ. A. No. 07-260, 2007 WL 3125184,
at *2 (D.N.J. Oct. 24, 2007) (citing *Mosaid Techs., Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332,
336 (D.N.J. 2004)).  This control over the evidence at issue and the van's subsequent destruction are
sufficient to support spoliation liability.  *See id.; see also Walters*, 209 F. Supp. 2d at 486 n.1, 491.

Plaintiff also argues that Benjamin Waltman did not intentionally destroy evidence, as he
"was understandably preoccupied with concerns" for his wife and son at the time.  (Pl.'s Opp'n 5.)
Courts within the Third Circuit have imposed spoliation sanctions absent evidence of intentional
destruction of evidence, applying a flexible, case-specific approach.  *See, e.g., Dowling v. U.S. Gov't*,
Civ. A. No. 00-49, 2008 WL 5046853, at *1 (D.V.I. Nov. 20, 2008) (citing *Baliotis*, 870 F. Supp.
at 1291-93) (additional citations omitted).  As intentional destruction is not a prerequisite for
suppression as a sanction for spoliation, Benjamin Waltman's purported good faith does not defeat
Dorel's showing that Benjamin Waltman could have — but chose not to — retain the minivan and
the Cosco.  Dorel has thus carried its burden on this point.

2.      *The evidence was relevant*

Plaintiff brings a strict liability design defect claim against Dorel.  (Compl. ¶ 70.)  To prevail,
a products liability plaintiff must establish that the product was: (1) defective; and (2) the proximate
cause of the harm.  *French v. Commw. Assocs., Inc.*, 980 A.2d 623, 632 (Pa. Super. Ct. 2009).
Evidence bearing on causation is thus clearly relevant.  *See Mount Olivet Tabernacle Church v.
Edwin L. Wiegand Div.*, 781 A.2d 1263, 1272 (Pa. Super Ct. 2001) (citing *Schmid*, 13 F.3d at 80)

7

("[G]enerally, in a design defect case, 'the defendant will want as much information as possible relevant to the issue of causation.'")

The parties dispute whether Ethan was in the Cosco car seat. (See Def.'s Mot. 2-3.) The company highlights Benjamin Waltman's testimony that Ethan had never used the Cosco prior to the day of the accident, as well as the deposition testimony of first responder Jeremy Sauder. Sauder testified that he recalled that the booster seat in the minivan in the position where Ethan was seated was "one of those basic seats that has a platform on the bottom and then has a back." (Def.'s Mot. Ex. 6, Dep. of Jeremy Sauder 16.) The Cosco does not have a back.

Plaintiff contends that the testimony of Ethan's mother and father establishes that he was in the Cosco. (Pl.'s Opp'n 8.) Plaintiff also offers the testimony of Chad Slover, another first responder present at the accident scene. Slover testified that he recalled a backless, rear-facing seat similar to the Cosco in the minivan. (Slover Dep. 16-17.)

The fact that Plaintiff challenges Dorel's interpretation of the evidence does not negate the relevance of the minivan or the Cosco to Plaintiff's products liability claim. The Cosco itself, its position in the minivan — or its absence  — all bear on causation. Dorel has established that the Cosco was relevant.

### 3.    The evidence was foreseeably discoverable

A duty to preserve evidence arises when the party knows that litigation is pending or likely, and it is foreseeable that discarding the evidence would be prejudicial to the other party. *Chauncey v. Peco, Inc.*, Civ. A. No. 08-4131, 2010 WL 537139, at *8 (E.D. Pa. Feb. 16, 2010) (quoting *Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 29 (Pa. Super. Ct. 2006)). In this case, Benjamin Waltman was on notice that a lawsuit was on the horizon. Having promptly notified his insurance carrier of

his claim, he knew within a week of the accident that his policy would likely not cover the value of his claim. Progressive's letter to him also informed him that he could retain counsel and pursue claims for damages in excess of his policy limits at his own expense.

The record also indicates that Waltman may have contemplated a claim arising from the accident. Waltman selectively photographed portions of the minivan before he transferred title to Midway Towing. (Waltman Dep. 50-55.) His sister-in-law, Rebecca Polson, also indicated that there were family discussions "a little while after the accident," as to whether Ethan "was in the wrong kind of car seat" or whether "the car seat was not . . . equipped correctly." (Polson Dep. 30.) It was thus reasonably foreseeable that the minivan and the Cosco would be discoverable when Waltman signed away title to the minivan and failed to secure its contents.

### B.   Suppression and an Adverse Inference are Appropriate Sanctions

Sanctions for spoliation may include: (1) dismissal; (2) suppression of evidence; (3) an adverse inference; (4) fines; and (5) attorneys' fees and costs. *Chauncey v. Peco, Inc.*, Civ. A. No. 08-4131, 2010 WL 537139, at *7 (E.D. Pa. Feb. 16, 2010). To determine which spoliation sanction is appropriate, courts in this Circuit consider: (1) the spoliator's degree of fault and personal responsibility; (2) the prejudice suffered by the opposing party; and (3) the availability of a lesser sanction that will avoid substantial unfairness to the opposing party and, if necessary, deter future spoliation. *Walters*, 209 F. Supp. 2d at 491 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *see also Schroeder v. Commw. Dep't of Transp.*, 710 A.2d 23, 27 (Pa. 1998) (adopting the Third Circuit's spoliation analysis).

#### 1.   Degree of fault

Plaintiff argues Waltman did not realize he might have a claim against Dorel and was

preoccupied with his wife's and son's injuries when he allowed Midway Towing to destroy the minivan and its contents. (Pl.'s Opp'n 6-7.)  However, even if Waltman did not appreciate the significance of the minivan and the Cosco at that time, "the circumstances do not present a situation where the allegedly defective product has been lost or destroyed through no fault of the plaintiff." *See Walters*, 209 F. Supp. 2d at 491.  Waltman expected Midway Towing to send the minivan to a junkyard. (Benjamin Waltman Dep. 60.)  He had no reason to expect that the evidence would be recoverable. *Cf. Sebelin v. Yamaha Motor Corp.*, 705 A.2d 904, 910 (Pa. Super. Ct. 1998) (observing that plaintiffs reasonably assumed ATV would be preserved as evidence at police station, although ATV was ultimately stolen from the police impound lot).  Dorel has thus demonstrated that Waltman was at least reckless in disposing of the minivan and the Cosco.

## 2.    *Degree of prejudice*

A plaintiff's legal theory is relevant to a court's determination of the degree of prejudice a defendant has suffered due to spoliation. *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, Civ. A. No. 06-2234, 2008 WL 2571227, at *9 (M.D. Pa. June 25, 2008) (citing *Schmid*, 13 F.3d at 79-80).  As this is a design defect claim, prejudice to Dorel is not as severe as it might have been in the manufacturing defect context. *Cf. Walters*, 209 F. Supp. 2d at 491 (citing *O'Donnell v. Big Yank, Inc.*, 696 A.2d 846 (Pa. Super. Ct. 1997)); *see also Medina ex rel. Beteta v. Rose Art Indus., Inc.*, Civ. A. No. 02-1864, 2003 WL 1877563, at *2 (E.D. Pa. Feb. 28, 2003).  Nevertheless, Plaintiff's spoliation has seriously prejudiced Dorel's defense, as Dorel disputes the identity of the booster seat Ethan used at the time of the crash. *Cf. Warnick v. NMC-Wollard, Inc.*, 512 F. Supp. 2d 318, 332-333 (W.D. Pa. 2007) ("The courts which have held that spoliation does not prejudice defendants in design defect litigation have done so . . . where the issue of the manufacturer's identity was not

otherwise in dispute.")

Plaintiff contends there is no genuine issue of product identification in this case because credible evidence exists that the Waltmans possessed the Cosco at the time of the accident.  (Pl.'s Opp'n 12.)  Plaintiff also states that the Cosco's absence demonstrates that it was used at the time of the crash, as "the only reason the Grand Explorer cannot be produced is because it was in the Dodge minivan when it was destroyed."  (*Id*.)  These arguments are unpersuasive; the Cosco's disappearance does not establish whether or not Ethan was in the seat at the time of the accident. Dorel has established sufficient prejudice due to Plaintiff's spoliation to warrant sanctions.

Dorel has also suffered prejudice with respect to the issue of seatbelt tension.  Dorel's expert, Van Arsdell, testified that physical evidence would "typically allow me to tell. . . how tight the seat belt was."  (Van Arsdell Dep. 19.)  Plaintiff's expert confirmed that an accident would typically create a "set mark . . . in the webbing, and that should allow you to position the latch plate into the position that it was at the time of the crash."  (Whitman Dep. 68.)  Whitman also testified that he would have expected to find stress marks on the seat shield and possibly its base.  (*Id*. at 69.)  On this front, however, prejudice to Dorel appears mitigated by the likelihood that the parties' experts would draw different conclusions regarding seatbelt tension even if the Cosco were available for their inspection.

### 3.    *Availability of a lesser sanction*

Dorel asks the Court to suppress testimony that Ethan was in the Cosco and to instruct the jury that whatever seat Ethan used had ten pounds of seatbelt tension.  Taking the factors discussed above into consideration, the Court finds the latter sanction inappropriate.  While the Court will grant Dorel the benefit of an adverse inference instruction, the jury will ultimately determine the

level of seatbelt tension.

However, an adverse inference will not level the playing field with respect to the issue of product identification. Other courts have imposed sanctions including "outright dismissal . . . if the destroyed evidence was sufficiently important." *Lekkas v. Mitsubishi Motors Corp.*, Civ. A. No. 97-6070, 2002 WL 31163722, at *5 (N.D. Ill. Sept. 26, 2002) (citation omitted); *see also Oxley v. Penobscot Cnty.*, Civ. A. No. 2010 WL 3154975, at *2 (D. Me. Aug. 9, 2010) (citing *Trull v. Volkswagen of Am., Inc.*, 187 F. 3d 88, 95 (1st Cir. 1999)) (noting that courts may exclude evidence as a spoliation sanction absent "bad faith or comparable bad motive"). The evidence at issue here was critical. To counterbalance the prejudice to Dorel resulting from the Waltmans' failure to preserve the Cosco or minivan, the Court will exclude the testimony of Benjamin and Kimberly Waltman that Ethan Waltman was using the Cosco at the time of the accident. *Cf. Quaglietta v. Nissan Motor Co., Ltd.*, Civ. A. No. 97-5965, 2000 WL 1306791, at *3 (D.N.J. Aug. 16, 2000) (excluding evidence in design defect case due to plaintiff's spoliation).

The parties have submitted proposed spoliation instructions. The Court will take the matter under advisement and craft an appropriate instruction at trial.

## IV.     CONCLUSION

Dorel has shown that spoliation sanctions are appropriate due to Plaintiff's destruction of the minivan and the Cosco. The Court will bar testimony from Benjamin and Kimberly Waltman regarding Ethan Waltman's use of the Cosco on the day of the accident, and will impose an adverse inference instruction as spoliation sanctions. An Order consistent with this Memorandum will be docketed separately.